IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| **JR FRUITTS**, | Case No. 2:14-CV-00309-SU |
| Plaintiff, | **FINDINGS AND** |
| v. | **RECOMMENDATION** |
| **UNION COUNTY,** a political subdivision of the state of Oregon, **ROCKY BURGESS, JOE VOLECK, STEVE WILSON, DOUG WRIGHT,** and **RICH COMSTOCK**, | |
| Defendants. | |

SULLIVAN, United States Magistrate Judge:

The Court again considers plaintiff JR Fruitts's claims arising from a Feb. 28, 2012 car accident that resulted in the death of a Union County road worker. U.S. District Court Judge Michael Simon dismissed plaintiff's original complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, but granted leave to amend. Plaintiff then filed the present amended complaint

Page 1 - FINDINGS AND RECOMMENDATION

("complaint"). Fruitts alleges constitutional tort and state law negligence claims against Union County and four county public works department employees, Rocky Burgess, Joe Voleck, Steve Wilson, and Doug Wright.[1] Defendants move to dismiss the complaint for failure to state a claim. Plaintiff opposes the motion. For the reasons set forth below, the Court recommends granting defendants' motion to dismiss.

## BACKGROUND

For the purposes of deciding a Rule 12(b)(6) motion to dismiss, the Court assumes all facts alleged in the complaint are true and views them in a light most favorable to the plaintiff. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, the pertinent facts set forth in the complaint are as follows.

On February 28, 2012, a county road crew was patching potholes on a stretch of Palmer Junction Road in Union County in northeastern Oregon. Am. Compl., at 3. The four-person work crew included John Rysdam and defendant Rocky Burgess, who was in charge of the crew's operations. Am. Compl., at 3-4. Palmer Junction Road was a rural two-lane road with an average traffic volume of 409 vehicles per day. Am. Compl., at 7. The road had no posted speed limit and thus the law set the limit at 55 mph. Am. Compl., at 3; Or. Rev. Stat. §811.105. Throughout the day, the crew was driving to different potholes along the road, stopping, and patching them. Am. Compl., at 9. At one point, on Burgess's orders, the crew parked their work truck in the middle of the southbound lane so they could patch a portion of road. Am. Compl., at 3-4. They were a short

---

[1] The amended complaint also included former public works director Rich Comstock as a defendant. However, at oral argument on June 30, 2015, plaintiff agreed to dismiss Comstock as a defendant. Oral Arg. Tr., at 14. Accordingly, the Court does not further discuss claims against defendant Comstock and recommends they be dismissed.

Page 2 - FINDINGS AND RECOMMENDATION

distance from a blind curve in the road. Am. Compl., at 3-4. The curve in the road blocked visibility such that southbound vehicles would not see the parked truck in their lane until they were 600-700 feet away from it. Pl.'s Resp. 2d Mot. Dismiss, at 23. The crew used a strobe light affixed to the work truck, but they did not set up any advance signs or other devices warning traffic of the work site. Am. Compl., at 4, 10. None of the crew members wore legally mandated high-visibility safety vests over their clothes so drivers would more easily see them. Am. Compl., at 10. When the accident occurred, several workers were standing in front of the truck– it is unclear from the complaint whether they were visible to approaching southbound traffic. Am. Compl., at 4. Although workers had used a hand sign intermittently during the day to warn traffic, they were not using it at the time of the accident. Am. Compl., at 10.

     Fruitts approached the work site, driving southbound at 35-40 miles per hour, well below the 55 mph speed limit. Am. Compl., at 3. He rounded the blind curve in the road and glanced at his radio. Am. Compl., at 4. When he looked up, he suddenly saw the truck in the middle of his lane of traffic. Am. Compl., at 4. He braked hard, and swerved into the oncoming lane to avoid the parked truck. Am. Compl., at 4. He managed to only scrape the side of the truck. Am. Compl., at 4. However, at the last moment, Rysdam panicked and ran from behind the truck into the road and in front of Fruitts's car. Am. Compl., at 4. The car struck Rysdam. Am. Compl., at 4-5. The car then careened into a ditch. Am. Compl., at 5. Plaintiff got out, administered CPR to Rysdam, and called 9-1-1. Am. Compl., at 5. By the time the ambulance arrived, Rysdam had died. Am. Compl., at 5. The car Fruitts was driving was destroyed, and Fruitts states that he suffered physical injuries and emotional trauma from the accident. Am. Compl., at 15, 30. Fruitts cooperated with an Oregon State Police investigation and was charged with manslaughter. Am. Compl., at 5. On Dec. 13, 2013,

a jury convicted Fruitts of criminally negligent homicide for his role in the accident. Defs.' 2d Mot. Dismiss, at 29 (Court Judgment). Oregon law lists the crime as a Class B felony. Or. Rev. Stat. § 163.145. "A person commits the crime of criminally negligent homicide when, with criminal negligence, the person causes the death of another person." *Id.*

In response to the accident, the Oregon Occupational Safety and Health Division ("Oregon OSHA") also investigated. Oregon OSHA determined that Union County violated federal and state safety requirements by failing to use required "advance warning devices" to apprise oncoming traffic of the work site and traffic hazard. Am. Compl., at 10; Burrows Decl. Ex. 2 (OSHA citation). Specifically, Oregon OSHA cited the county for failing to comply with Or. Admin. R. 437-002-2224(12) and 437-003-3224(12) which state:

> You must require employees to set up appropriate traffic controls when they stop on or adjacent to a highway, street, or road in a way that creates a hazard and when traffic cannot adjust safely on its own. The controls must conform to the Millennium Edition of the (FHWA) Manual of Uniform Traffic Control Devices (MUTCD), December 2000.

OSHA labeled the violation "Serious," and assessed the county $2,500 in fines. Burrows Decl. Ex. 2 (OSHA citation). Plaintiffs allege defendants violated not just the Federal Highway Administration's Manual of Uniform Traffic Control Devices ("MUTCD") and its implementing regulations but other required standards such as The Oregon Temporary Traffic Control Handbook For Operations of Three Days or Less ("OTTCH"). Am. Compl., at 12-15. The MUTCD serves as "the national standard for all traffic control devices installed on any street, highway, or bicycle trail open to public travel." 23 C.F.R. § 655.603(a); *see* 23 C.F.R. § 655.601 (incorporating by reference the MUTCD into federal regulations). Oregon has adopted the MUTCD and also promulgated supplemental standards based on the MUTCD, such as the OTTCH. Or. Admin. R.

Page 4 - FINDINGS AND RECOMMENDATION

734-020-0005(1).

The OTTCH and MUTCD mandate that work crews use multiple signs to warn traffic even for mobile work and short duration work that takes less than 15 minutes to complete. OTTCH §§ 5.0. 5.1, 5.2; MUTCD §§ 6G.02 (2000 ed.). For short duration work on a two-lane, two-way road, crews are required to leave at least 10 feet of travel in a given lane for vehicles to pass. OTTCH § 5.2; MUTCD §§ 6C.10, 6G.07, 6G.09; *see* Am. Compl., at 13. If crews are forced to block a lane, they must follow detailed lane closure procedures and diagrams which include cones, signage, and/or flaggers. OTTCH § 5.2; MUTCD §§ 6C.10, 6G.07, 6G.09; *see* Am. Compl., at 13. Additionally, among other requirements, the OTTCH and MUTCD require that road workers wear high visibility safety vests whenever they are on or near roadways. OTTCH § 1.4; MUTCD § 6E.02. The road crew on Palmer Junction Road did not follow any of these requirements.

Plaintiff, joined by a co-plaintiff Marianne Zinzer, filed his first complaint before this Court against Union County and public works employees as well as Captain Hooks towing company, and towing company owner Paul McKaig.[2] Compl., at 1, 3. Plaintiffs alleged negligence, conversion, violations of lien foreclosure law, and constitutional tort claims under 42 U.S.C. § 1983 based on the Fourth, Fifth, and Fourteenth Amendments. Compl., at 1, 13-31. Defendants filed a Rule 12(b)(6) motion to dismiss, and this Court recommended granting the motion. The Court based its recommendation to dismiss the federal claims on the *Heck* doctrine, which bars any action that

---

[2] The original complaint also named as a defendant Union County prosecutor Jared Boyd, but the Court dismissed him with prejudice as a defendant. *See* Doc. #14.

would necessarily imply the invalidity of a prior state court judgment,[3] and on the merits. F. & R., at 20, 27, 29. The Court then recommended declining supplemental jurisdiction over the pendent state claims. F. & R., at 31. Judge Simon adopted in part the Court's findings and recommendations. He declined to base his holding on the *Heck* doctrine but agreed that plaintiffs failed to state a federal claim upon which relief could be granted. Opin. & Order, at 4, 7-8. Judge Simon dismissed plaintiffs' claims but granted leave to amend.[4] Opin. & Order, at 8.

Plaintiff Fruitts filed the present amended complaint which differs in key respects from the previous complaint.[5] Among the many changes, Marianne Zinzer is no longer a co-plaintiff, and Fruitts has eliminated the towing company defendants and related claims. The amended complaint focuses on the events that gave rise to the accident. It includes new factual allegations such as the road workers' failure to wear legally mandated high-visibility vests at the time of the accident and certain defendants' admissions that they had not followed safety rules. Am. Compl., at 5-6, 8, 10-11. The amended complaint also adds pages detailing federal and state road safety requirements and

---

[3] *Heck v. Humphrey*, 512 U.S. 477 (1994). Under *Heck*, "if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which Section 1983 damages are sought, the 1983 action must be dismissed." *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996).

[4] In the instant motion to dismiss, defendants again argue the *Heck* doctrine bars plaintiff's claims. Defs.' 2d Mot. Dismiss, at 14-17. In accordance with Judge Simon's opinion (Doc. #29), the Court here finds it "need not reach the issue of whether Plaintiffs' Section 1983 claim is barred by the *Heck* rule because even assuming it is not, Plaintiffs' Section 1983 claim fails on the merits." Opin. & Order, at 4.

[5] In their motion to dismiss, defendants contend that "the Amended Complaint is virtually identical to the original complaint." 2d Mot. Dismiss, at 8. However, a careful review of the two documents shows this is clearly not the case.

Page 6 - FINDINGS AND RECOMMENDATION

arguing specifically how defendants' conduct deviated from those requirements. Am. Compl., at 4, 7-9, 11-13.  Furthermore, plaintiff includes new language explaining his allegations of Due Process violations.  Am. Compl., at 2, 16-17.  In the amended complaint, plaintiff brings Section 1983 constitutional tort claims and a state law negligence claim.  Defendants move to dismiss the amended complaint on Rule 12(b)(6) grounds and plaintiff opposes the motion.

## LEGAL STANDARD

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6), 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.  "This standard does not rise to the level of a probability requirement, but it demands 'more than a sheer possibility that a defendant has acted unlawfully.'" *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 641 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 1845 (2015) (quoting *Iqbal*, 566 U.S. at 678).  A plaintiff need not detail all factual allegations, but the complaint must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above a speculative level." *Id.*  While the court must assume all facts alleged in a complaint are true and view them in a light most favorable to the nonmoving party, it need not accept as true any legal conclusion set forth in the complaint. *Ashcroft v. Iqbal*, 556 U.S. at 678.

## DISCUSSION

Plaintiff alleges six claims.  First, plaintiff alleges the county employees are liable under

Section 1983 for violating his Fourteenth Amendment Due Process rights. Am. Compl., at 15. Plaintiff's second, third, fourth, and fifth claims seek damages from Union County under Section 1983, alleging the County's failure to properly train employees; its informal policies, customs, and practices; its formal policies; and its ratification of those unconstitutional policies resulted in the violation of defendant's Due Process rights. Am. Compl., at 22-24. Finally, plaintiff alleges negligence against Union County under state law. Am. Compl., at 25. The Court considers each of plaintiff's claims in turn.

**I. Claim One: Section 1983 Claims Against County Employees**

Under Section 1983, a plaintiff may sue individuals that, acting under color of state law, violate his constitutional rights. 42 U.S.C. § 1983. Fruitts seeks to recover damages from the four individual defendants for alleged violations of his substantive Due Process rights under the Fourteenth Amendment. The Fourteenth Amendment's Due Process Clause provides that no state or municipal actor shall "deprive any person of life, liberty, or property, without due process of law," U.S. Const. amend. XIV, § 1. Thus, to plead a Due Process violation, plaintiff must allege facts showing (1) defendants deprived him of a protected life, liberty, or property interest; and (2) that defendants did so without due process of law. Because this is a substantive Due Process claim, plaintiff must satisfy the second element by showing that government actors deprived him of the protected interest in a manner that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). Even if plaintiff pleads facts showing

a constitutional violation, qualified immunity may nonetheless shield defendants from liability if their conduct did not violate clearly established constitutional rights. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

### A. Deprivation of a Protected Interest

As a threshold matter, plaintiff must allege deprivation of a life, liberty, or property interest protected by the Due Process Clause. *Nunez*, 147 F.3d at 871; *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006). Although these interests encompass many specific rights, the Supreme Court and the Ninth Circuit have cautioned courts against further broadening their scope, particularly the scope of the liberty interest. *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992); *Brittain*, 451 F.3d at 990; *Nunez*, 147 F.3d 867, 875 n.4 (9th Cir. 1998). Courts must "exercise the utmost care whenever [they] are asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of federal judges." *Brittain*, 451 F.3d at 990 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)).[6] Accordingly, a court must make the determination by assessing whether plaintiff's "description of the asserted fundamental liberty interest" fits within "a narrow definition of the interest at stake." *Raich v. Gonzalez*, 500 F.3d 850, 863 (9th Cir. 2007) (citing *Washington,* 521 U.S. at 721); *Morgan v. Bend-La Pine Sch. Dist.*, 2009 WL 312423, at *10 (D. Or. Feb. 6, 2009).

---

[6] The Supreme Court has explained:
> [T]he Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended. The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.

*Collins*, 503 U.S. at 125 (internal citations omitted).

Here, Fruitts argues that the individual defendants deprived him of a liberty interest when they failed to follow legally-mandated safety measures in the planning and operation of the work site, creating conditions that caused the fatal accident. Am. Compl., at 2, 15-22; Pl.'s Resp. 2d Mot. Dismiss, at 4. Plaintiff describes the liberty interest as his "right to travel on the roadway without risk of physical injury" and his right to "move upon public roads without fear of the loss of liberty or life on account of actions of government officials who controlled and managed those roads." Pl.'s Resp. 2d Mot. Dismiss, at 4; Am. Compl., at 2.[7] Again, as in the original complaint, plaintiff does not articulate a recognizable liberty interest. *See* F. & R., at 22; Opin. & Order, at 5-6. Plaintiff provides no legal precedent recognizing the "right to travel on the roadway without risk of physical injury" or any similar formulation as part of the constitutional liberty interest, and a thorough search of case authority did not reveal any. However, various courts have interpreted the constitutional liberty interest to include the right to travel and the right to personal security. Accordingly, the Court examines whether plaintiff's asserted "right to travel on the roadway without risk of physical injury" fits within either rubric.

### (1) Liberty Interest in Personal Security

Due Process protects an individual's liberty interest in his personal, bodily security. *See Kennedy v. City of Ridgefield,* 439 F.3d 1055, 1061 (9th Cir. 2006) ("It is well established that the

---

[7] Plaintiff uses other similar descriptions for his asserted interest, such as the "rights of the traveling public to be free from undue harm," "the protected rights and safety of individuals who use the roadways," and "the protected rights of the users of the roadway to be free from deliberately indifferent governmental actions placed the entire community in danger from actions which predictably lead to death or serious injury." Am. Compl., at 16, 17.

Constitution protects a citizen's liberty interest in her own bodily security");*Washington*, 521 U.S. at 720 (liberty interest includes right "to bodily integrity"); *Ingraham v. Wright*, 430 U.S. 651, 673 (1977) (liberty interest includes "right to be free from . . . unjustified intrusions on personal security"). Courts have found deprivation of a liberty interest in personal security in cases in which plaintiffs experienced physical injury, restraint, or bodily intrusions such as sexual assault or forced stomach pumping. *See, e.g., Kennedy*, 439 F.3d at 1057, 1061 (plaintiff severely wounded by a gunshot); *Wood v. Ostrander*, 879 F.2d 583, 586, 588, 596 (9th Cir. 1989) (plaintiff raped); *Ingraham*, 430 U.S. at 674 (school officials' restraint of student and infliction of "appreciable physical pain"); *Rochin v. California*, 342 U.S. 165, 172 (1952) (forced stomach pumping of a drug suspect). However, courts have declined to recognize a liberty interest in personal security in cases in which plaintiffs suffered emotional harm but no physical injury. *See, e.g., Rasmus v. State of Ariz.*, 939 F. Supp. 709, 716-17 (D. Ariz. 1996) (finding no liberty interest implicated where school officials gave plaintiff's son a "time-out" from class and plaintiffs presented no evidence that he "was forcibly restrained, physically harmed or suffered pain"); *Salter v. Hernandez*, 2013 WL 3054179, at *6 (E.D. Cal. June 17, 2013) (coworkers' alleged mistreatment of plaintiff may have caused her emotional suffering but did not implicate a liberty interest in personal security); *Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 616 F.3d 963, 970-71 (9th Cir. 2010) (alleged placement of an unwarranted disciplinary notation in plaintiff's transcript may have injured her reputation and caused her "psychological trauma" but did not implicate a liberty interest). Similarly, courts have found mere exposure to the risk of physical harm was not enough to implicate

a liberty interest. *See Sanchez v. City of Fresno*, 2014 WL 2042058, at *10-*11 (E.D. Cal. May 16, 2014) (Section 1983 liability must be based on "actual, serious bodily injury" not merely the threat of it); *see, e.g., Bennett v. Gow*, 2008 WL 4083001, at *1, *4 (W.D. Wash. Aug. 26, 2008) (forceful arrest that resulted in no physical injuries did not violate plaintiff's liberty interest in personal security). In the complaint, plaintiff alleges that the accident injured him physically and emotionally, but provides no further detail. Am. Compl., at 15, 30; Pl.'s Resp. 2d Mot. Dismiss, at 4. When asked at oral argument to explain Mr. Fruitts's injuries, plaintiff indicated that he did not have to show any physical injuries to recover damages. Oral Arg. Tr., at 14-15. Plaintiff elaborated that Fruitts' damages were "primarily" emotional due to the emotional impact of almost crashing and the trauma of witnessing the fatal accident. Oral Arg. Tr., at 15-16. The Court does not doubt that such an experience could prove emotionally traumatic. However, such emotional trauma absent appreciable physical injury does not implicate a constitutional liberty interest in personal security. Despite plaintiff's contentions at oral argument, plaintiff has provided no case law to support such a finding, and the Court can find none. The Court is constrained to a narrow interpretation of the constitutional liberty interest and, accordingly, declines to expand its scope to encompass plaintiff's emotional trauma. *See Collins*, 503 U.S. at 125; *Brittain*, 451 F.3d at 990.

### (2) Liberty Interest in Intrastate Travel

Plaintiff also characterizes his liberty interest as a "fundamental right of free movement," specifically, a right to engage in intrastate travel. Pl.'s Resp. 2d Mot. Dismiss, at 11. Plaintiff claims the defendants' conduct prevented him from driving safely on Palmer Junction Road and thereby

deprived him of this right. The Supreme Court has recognized a fundamental right to interstate travel protected by the Due Process Clause. *Shapiro v. Thompson*, 394 U.S. 618, 630 (1969), *overruled in part on other grounds by Edelman v. Jordan*, 415 U.S. 651, 687 (1974) ("The constitutional right to travel from one State to another occupies a position fundamental to the concept of our Federal Union"); *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 944 (9th Cir. 1997); *United States v. Wheeler*, 254 U.S. 281, 293 (1920) ("In all the States from the beginning down to the adoption of the Articles of Confederation the citizens thereof possessed the fundamental right, inherent in citizens of all free governments, peacefully to dwell within the limits of their respective States, to move at will from place to place therein, and to have free ingress thereto and egress therefrom"). However, there is no clear right to intrastate travel. Both the Supreme Court and the Ninth Circuit have declined to address whether citizens have a constitutionally protected liberty interest in travel within a state or municipality. *Mem'l Hosp. v. Maricopa Cnty.*, 415 U.S. 250, 255-56 (1974); *Nunez by Nunez*, 114 F.3d at 944 n.7; *Lauran v. U.S. Forest Serv.*, 141 F. App'x 515, 520 (9th Cir. 2005). Although several other circuits have recognized a right to intrastate travel,[8] district

---

[8] Circuits are split on the existence of a constitutional right to intrastate travel. *Compare Ramos v. Town of Vernon*, 353 F.3d 171, 176 (2d Cir. 2003) ("The right to intrastate travel, or what we sometimes will refer to as the right to free movement, has been recognized in this Circuit"); *Johnson v. City of Cincinnati*, 310 F.3d 484, 498 (6th Cir. 2002) ("In view of the historical endorsement of a right to intrastate travel and the practical necessity of such a right, we hold that the Constitution protects a right to travel locally through public spaces and roadways"); *Lutz v. City of York*, 899 F.2d 255, 268 (3d Cir. 1990) (recognizing right to intrastate travel as derived from principles of substantive Due Process) *with Wright v. City of Jackson, Mississippi*, 506 F.2d 900, 901-02 (5th Cir. 1975) (no fundamental right to intrastate travel). Notably, the cases in which other circuits found a fundamental right to intrastate travel differ from the present one in key respects. The cases found the right to intrastate travel implicated where laws

courts in the Ninth Circuit have refused to expand the constitutional liberty interest to include such a right. *Hammel v. Tri-Cnty. Metro. Transp. Dist. of Oregon*, 955 F. Supp. 2d 1205, 1210 (D. Or. 2013); *Daly v. Harris*, 215 F. Supp. 2d 1098, 1114 (D. Haw. 2002) *aff'd,* 117 F. App'x 498 (9th Cir. 2004) (the "Court is skeptical that the right to free interstate movement is so broad as to encompass the right to physically move about every part of a state ('intrastate travel')"); *Klock v. Cain*, 813 F. Supp. 1430, 1433 (C.D. Cal. 1993) ("there is no showing (or even a direct contention) that [the right to intrastate travel] is a federal constitutional right"). In *Hammel*, the Oregon district court found it "highly improbable that the Ninth Circuit would recognize a fundamental right to intrastate travel absent some form of absolute or intentional interference" such as a law specifically and improperly restricting travel. *Hammel*, 955 F. Supp. 2d at 1210. The higher courts advise district courts to exercise the "utmost care" in considering whether to expand the scope of the Due Process liberty interest. *Brittain*, 451 F.3d at 990 (quoting *Washington*, 521 U.S. at 720). Bearing that in mind, the Court agrees with *Hammel* and the other district court opinions which have refused to extend the liberty interest to include a right to intrastate travel. Plaintiff's asserted right to intrastate travel is not a liberty interest protected by Due Process.

---

explicitly restricted travel for certain individuals or in certain locations. *Ramos*, 353 F.3d 171, 172 (2d Cir. 2003) (town ordinance establishing a nighttime curfew restricting minors' movements after certain hours); *Johnson*, 310 F.3d at 487-88 (city ordinance banning certain individuals convicted of drug crimes from entering "drug exclusion zones" around the city); *Lutz*, 899 F.2d at 256, 268-69 (city ordinance prohibiting "cruising," the practice of driving repeatedly around public roads through heart of city). Here, the plaintiff attempts to apply the right to intrastate travel to a single unintended incident which prevented him from traveling by car on a specific road.

Even if this Court were to interpret the recognized constitutional right to interstate travel as encompassing a right to intrastate travel, plaintiff's claim still fails. The Ninth Circuit recognizes a fundamental right to interstate travel but holds that "burdens on a single mode of transportation do not implicate the right to interstate travel." *Miller v. Reed*, 176 F.3d 1202, 1204-05 (9th Cir. 1997) ("By denying Miller a single mode of transportation—in a car driven by himself—the DMV did not unconstitutionally impede Miller's right to interstate travel"); *Gilmore v. Gonzales*, 435 F.3d 1125, 1137 (9th Cir. 2006) (appellant had no "fundamental right to travel by airplane even though it is the most convenient mode of travel to him"); *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1062 (9th Cir. 2006) (weight restrictions preventing plaintiff from landing a particular type of private jet on at a small resort airport did not impinge on plaintiff's right to interstate travel). Here, Fruitts only alleges an impediment to his right to travel in a car along a particular county-maintained road. Defendants' alleged conduct did not deprive plaintiff of a larger constitutional right to travel and move freely. Rather, it allegedly deprived him of a specific mode of travel along a specific route. *See Di Bartelo v. Scott*, 2012 WL 3229385, at *5 (C.D. Cal. June 20, 2012) *report and recommendation adopted*, 2012 WL 3229301 (C.D. Cal. Aug. 6, 2012). Even if the Court recognized a constitutional right to intrastate travel, deprivation a single mode of travel on a single occasion would not deprive plaintiff of this right. Thus, plaintiff fails to show a deprivation of his fundamental right to travel. Because plaintiff fails to allege facts showing he was deprived of any recognized life, liberty, or property interest, his Due Process claim against the four county employees

should be dismissed as he fails to state a Section 1983 claim against the four county employees.

### B. Due Process

Even if plaintiff could establish deprivation of a protected interest, it is a close question whether plaintiff could show that defendants deprived him of that interest without due process. Government conduct only violates Due Process rights if it deprives a plaintiff of a protected life, liberty, or property interest in a manner so "brutal" and "offensive" that it "shocks the conscience." *Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998) (quoting *Rochin*, 342 U.S. at 172-73). Because conduct that shocks the conscience in one set of circumstances may not do so in another, courts apply different standards of culpability to different scenarios of government conduct. *Lewis*, 523 U.S. at 850-53. In any case, a plaintiff must allege greater culpability than simple negligence to make out a claim for a Due Process violation. *Daniels v. Williams*, 474 U.S. 327, 332 (1986); *Paul v. Davis*, 424 U.S. 693, 701 (1976). In emergency situations in which officials must "act decisively" and make decisions "in haste" and "under pressure," courts apply a standard that asks whether the official acted "maliciously and sadistically for the very purpose of causing harm." *Lewis*, 523 U.S. at 853; *Hammel*, 955 F. Supp. 2d at 1211. However, in a situation in which deliberation is practical, a government actor's "deliberate indifference" to a plaintiff's life and safety will violate Due Process. *Lewis*, 523 U.S. at 851, 853-54.; *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). The deliberate indifference standard requires a showing that a government actor consciously disregarded a substantial risk of serious harm that was "a known or obvious consequence of his

actions." *Kennedy*, 439 F.3d at 1064; *see Farmer v. Brennan*, 511 U.S. 825, 839 (1994); *see also Hammel,* 955 F. Supp. 2d at 1211; *see also Estate of Kalama v. Jefferson Cnty.*, 2015 WL 464891, at *9 (D. Or. Feb. 4, 2015).

Neither party disputes that the deliberate indifference standard would apply in this case as defendants had the time and ability to deliberate in preparing and performing the road work. However, even with plaintiff's added factual allegations in the amended complaint, it is a close question whether defendants' alleged disregard of safety requirements rises above mere negligence to the level of deliberate indifference. A careful review found no cases on point addressing this issue. That said, the Court is keenly aware of the Supreme Court's admonishment that the Fourteenth Amendment is not "a font of tort law" and does not "supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society." *Daniels*, 474 U.S. at 332; *see Paul*, 424 U.S. at 701. The Court need not determine here whether defendants acted with deliberate indifference as the complaint fails on other grounds. Even if plaintiff could show defendants acted with deliberate indifference, the alleged facts simply do not show a violation of plaintiff's Due Process rights.

### C. Qualified Immunity

Qualified immunity presents another bar to plaintiff's Section 1983 claims against the individual defendants. A government official is not liable under Section 1983 if his or her "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).  Even if plaintiff could establish defendants violated his constitutional rights, the Court must still consider "whether the right was clearly established" as of the date of the events and "in light of the specific context of the case." *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009).  The "contours of the constitutional right in question" have to have been "sufficiently clear that a reasonable official would understand that what he [was] doing violate[d] that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  The Court would have to decide whether it was clearly established on Feb. 28, 2012, that failure to follow safety standards on a road project would violate a driver's constitutional rights.  As noted above, the Court can find no on-point cases and plaintiff provides no case law to show his "right to travel on the roadway without risk of physical injury" was clearly established.  Thus, even if plaintiff had alleged sufficient facts to show a constitutional violation, the suit is barred by qualified immunity.

Accordingly, the Court finds the plaintiff fails to allege facts showing the four individual defendants deprived him of a protected interest in violation of the Due Process clause.  Moreover, even if plaintiff's allegations were sufficient, qualified immunity shields the defendants. The Court recommends the Section 1983 claims against the four individual defendants be dismissed.

### III.  Claims Two, Three, Four, and Five: Section 1983 Claims Against Union County

As for the claims against Union County, a local government may face liability under Section 1983 only if its conduct, policies, or customs resulted in the constitutional violation at issue in the case.  *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694-95 (1978)*; City of Canton, Ohio v. Harris*,

489 U.S. 378, 385 (1989). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. 658, 691 (1978). "While the liability of municipalities doesn't turn on the liability of individual [officials], it is contingent on a violation of constitutional rights." *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994). Thus, regardless of whether a plaintiff alleges a failure to train, defective policies and practices, or ratification of an unconstitutional policy, there can be no municipal liability, under Section 1983, without some underlying constitutional violation. Here, plaintiff alleges the County's failure to properly train employees; its informal policies, customs, and practices; its facially defective policies; and its ratification of those unconstitutional policies resulted in the violation of plaintiff's Due Process rights. Am. Compl., at 22-24. However, as explained above, plaintiff fails to allege facts showing he was deprived of any interest protected by the Due Process Clause. Thus, his facts do not support a finding of any constitutional violation. Absent a constitutional violation, Union County cannot be held liable. The Court recommends dismissal of all of plaintiff's Section 1983 claims against the County.

**IV. Claim Six: Negligence**

There remains plaintiff's state-law negligence claim against the County. A district court may decline to exercise supplemental jurisdiction over state-law claims if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. 1367(c)(3). In deciding whether to do so, a court must consider "the values of judicial economy, convenience, fairness, and comity." *Nishimoto v. Federman–Bachrach & Associates*, 903 F.2d 709, 715 (9th Cir. 1990). When a district court

dismisses all federal-law claims before trial, "the balance of the factors . . . point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988); *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc); *see, e.g., Crane v. Allen*, 2012 WL 602432 (D. Or. Feb. 22, 2012). Here, the Court has considered the aforementioned factors. Given that the Court recommends dismissing all federal claims in this case, the factors do not support retaining plaintiff's state law claim. Accordingly, plaintiff's negligence claim should be dismissed without prejudice.

## RECOMMENDATION

For the above reasons, defendants' Motion to Dismiss for Failure to State a Claim (Doc. #31) should be GRANTED. Plaintiff's federal claims should be DISMISSED, and plaintiff's state-law claim should be DISMISSED with leave to refile the claim in state court.

## SCHEDULING ORDER

The above Findings and Recommendations will be referred to a United States District Judge for review. Objections, if any, are due within fourteen (14) days . If objections are filed, a response to the objections is due fourteen (14) days after the date the objections are filed and the review of the Findings and Recommendations will go under advisement on that date.

IT IS SO ORDERED.

DATED this 17th day of August 2015.

/s/ Patricia Sullivan
Patricia Sullivan
United States Magistrate Judge